IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:17cr242-1 |
| | ) | |
| JONATHAN MORRISON NORRIS | ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is the renewed motion of Defendant Jonathan Morrison Norris for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (Doc. 31.) The Government has filed a response. (Doc. 32.) For the reasons set forth below, the motion will be denied.

I.  BACKGROUND

Norris was charged with a drug conspiracy in a single-count indictment containing five objects. (Doc. 1.) The case was tried to a jury from September 11-14, 2017. At the close of the Government's evidence, Norris moved for judgment of acquittal under Rule 29 as to all charges. The Government did not resist, and the court granted, Norris's Rule 29 motion as to object three - unlawful possession of pseudoephedrine with reasonable cause to believe it would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 802(34)(K) and 841(c)(2) and object five

- distribution of heroin in violation of 21 U.S.C. § 841(a)(1). As to the remaining objects, the court denied the motion.

Norris renewed his Rule 29 motion at the close of the case, even though the Defendant elected not to testify or present evidence. After four days of trial involving the testimony of eight cooperating co-conspirators and two law enforcement officers, the case was submitted to the jury on object one - conspiracy to knowingly or intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance within the meaning of 21 U.S.C. § 812, in violation of 21 U.S.C. § 841(a)(1); object two - conspiracy to knowingly or intentionally manufacture a quantity of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance within the meaning of 21 U.S.C. § 812, in violation of 21 U.S.C. § 841(a); and object four - conspiracy to knowingly or intentionally possess equipment, chemicals, products, and materials which may be used in the manufacture of methamphetamine, a Schedule II controlled substance within the meaning of 21 U.S.C. § 812, knowing, intending, and having reasonable cause to believe that they will be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6).

The jury convicted Norris on all three objects. Norris renewed his Rule 29 motion after the jury returned its verdict,

and the court reserved ruling when Norris accepted the court's invitation to brief his argument.

**II. ANALYSIS**

Under Federal Rule of Criminal Procedure 29(a), at the close of the Government's evidence "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Such a motion for acquittal may be renewed at the close of all the evidence (Rule 29(a)), and again after the jury returns its verdict (Rule 29(c)(1)). Norris moved at each of these stages. As noted, the court granted his motion as to objects three and five after the close of the Government's evidence but denied it as to the remaining objects.

"A defendant challenging the sufficiency of the evidence faces a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007) (citation omitted), cert. denied, 128 S. Ct. 1690 (2008). The court must view the evidence in the light most favorable to the Government, determining whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005); Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial as well as direct evidence must be considered, and a conviction may rely entirely on the former. United States v. Gallimore, 247 F.3d 134, 137 (4th Cir. 2001); United States v.

Harvey, 532 F.3d 326, 334 (4th Cir. 2008). Indeed, "circumstantial evidence . . . may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008) (quoting United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989)).

However, the court must be satisfied that there is substantial evidence: that is, when viewed in the light most favorable to the Government, "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In assessing the evidence, the court is mindful that "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994)). Moreover, the court must "assume that the jury resolved all contradictions . . . in favor of the Government." United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993). Finally, the evidence must be viewed cumulatively and in context, not in piecemeal fashion. Burgos, 94 F.3d at 863 (citing Kyles v. Whitley, 514 U.S. 419 (1995)).

In order to prove each of the three objects of the conspiracy

4

with which Norris was charged, the Government must show beyond a reasonable doubt that (1) from on or about January 1, 2014, continuing up to and including February 17, 2017, two or more persons came to a mutual agreement or understanding to accomplish a common and unlawful plan, as charged in the indictment as to that object of the conspiracy; (2) the Defendant knew of the conspiracy as to that object; and (3) the Defendant knowingly and voluntarily became a part of the conspiracy as to that object. Burgos, 94 F.3d at 857. To support a conviction for any object of the conspiracy, this showing must be made separately as to that object.

A conspiracy can be inferred from the totality of the circumstances. Id. at 857-58. Indeed, "[b]y its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement." Id. at 857. For this reason, "a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced." Id. Relevant evidence includes "a defendant's 'relationship with other members of the conspiracy, the length of the association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" Id. at 858 (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)). The Government must prove both the existence of the conspiracy and the defendant's connection to it beyond a reasonable doubt, yet it "need not prove

5

that the defendant knew the particulars of the conspiracy of all of his coconspirators." Id. It is sufficient that the defendant joined a conspiracy with an understanding of its unlawful nature and willfully joined in the plan on one occasion. Id.

Norris contends that the Government's evidence is insufficient for a reasonable jury to conclude beyond a reasonable doubt that he committed these crimes. He devotes nearly all his discussion to the first object, conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Norris argues that, because the co-conspirator witnesses were all awaiting sentencing for their involvement in this conspiracy, their testimony is "so inherently incredible that a judgment of acquittal is appropriate." (Doc. 31 at 2.) He grounds this argument in the fact that the cooperating witnesses had been incarcerated for extended periods of time and could not be believed when they were offering their testimony in hopes of receiving a sentence reduction. (Id.)

Norris also argues that no packaging material used to transport the methamphetamine was ever found in his possession; no methamphetamine was shown to have been sent to, or from, his home address; the police never found any methamphetamine on his person, or in his home or vehicle; he was never the target of a controlled buy; and there is no evidence that he lived the "high lifestyle" of a "dealer in pounds of meth." (Id. at 2-4.) Norris also points

to possible inconsistencies in the testimony of various witnesses. Finally, he challenges the strength of the Government's case given that witnesses were allowed to give lay testimony that a substance they dealt with was methamphetamine. (Id. at 4.)

The Government contends that it presented overwhelming evidence of Norris's guilt. It points to testimony from eight cooperating co-conspirators and two law enforcement officers. The Government argues that this testimony, if believed, established that these witnesses: used methamphetamine with, purchased it from, and sold it to, Norris; sold methamphetamine to others for Norris; and picked up shipments of methamphetamine from California for Norris and at his direction. The Government contends there was ample evidence that Norris was accountable for well in excess of 500 grams of methamphetamine.

The Government is correct. Collectively, the testimony from eight cooperating co-conspirators established that they used methamphetamine with Norris, made it with him, purchased it from him, and sold it to others for him. Witnesses testified that at Norris's direction, they picked up shipments of methamphetamine sent from California to locations selected by Norris around Rowan County (frequently abandoned or empty houses). The Government introduced testimony from multiple witnesses as to how the methamphetamine was sent to Norris in one-pound packages concealed inside stuffed animals in shipping packages sent from a supplier

7

in California.  These same stuffed animals were found in a storage unit maintained by co-conspirator Thomas Martinez, along with other evidence of methamphetamine-making chemicals and supplies.

There were also text messages between Norris and a co-conspirator reflecting agreements to distribute methamphetamine. Witnesses, including Emily Vuncannon, who distributed methamphetamine for Norris, testified that proceeds from sales of the drug were returned to Norris.  The cumulative effect of this testimony was overwhelming, establishing that Norris was accountable for well in excess of 500 grams of methamphetamine, and it is sufficient to support the jury's verdict as to object one.  Any discrepancies or questions of credibility were for the jury to resolve, and it was within the jury's province to resolve them in favor of the Government.  Foster, 507 F.3d at 245.  As to Norris's claim that he did not enjoy the lifestyle of a major drug dealer, not all drug dealers live the high life, and there was evidence that his employment was sporadic, which supports the conclusion that he sold methamphetamine to supplement his income.

Norris's arguments as to the second and fourth objects of the conspiracy – to manufacture methamphetamine and to unlawfully possess equipment, chemicals, and materials which may be used in the manufacture of methamphetamine with knowledge, intent, or reasonable cause to believe that they will be used to manufacture methamphetamine – are less developed.  In addition to his argument

8

that the testimony of the co-conspirators is unreliable, Norris argues that the computer disk that Clint Dunbar testified he received from Norris, which contained files on how to manufacture methamphetamine, is supported only by Dunbar's testimony. Lastly, Norris argues that, given the amount of methamphetamine that he was allegedly receiving, there would have been no need for him to manufacture methamphetamine.

The Government points to the testimony establishing Norris's close relationship to Martinez – known as "The Chemist," and evidence that Martinez worked for Norris. It also cites Dunbar's testimony that Norris gave him the disk containing multiple files with instructions on how to manufacture methamphetamine. Moreover, the Government emphasizes that more than one witness testified during trial that Norris was looking for more methamphetamine when he ran out of his supply.

While the Government's evidence as to objects two and four was not as robust as it was for object one, it is nevertheless sufficient to support a reasonable factfinder's conclusion of Norris's guilt beyond a reasonable doubt. This evidence included extensive testimony from co-conspirators establishing a close working relationship between Norris and Martinez, as well as the testimony from one witness that Norris and Martinez cooked methamphetamine together.

Jeffrey Long testified that he was introduced to Norris by

Martinez; Christina Moore testified that she came back into contact with Norris through Martinez; Gary Benson, another cooperating co-conspirator, testified that he was introduced to Norris through Martinez, that Martinez and Norris were close, that Martinez and Norris cooked methamphetamine together, and that Martinez referred to Norris as "Coach;" Vuncannon testified that she was introduced to Norris through Martinez and that Martinez was working for Norris; and Chief Deputy Ramsey testified that he found chemicals and equipment used in making methamphetamine in a storage locker rented by Martinez which also contained the packages and stuffed animals in which the methamphetamine had been shipped to Norris from California, along with at least one shipping label from California and a receipt showing a shipment from Martinez to Eric Gomez in California. According to Benson, Eric Gomez was Norris's cousin in California from whom Norris acquired methamphetamine. Burgos, 94 F.3d at 869 (noting that familiarity with co-conspirators constitutes further circumstantial evidence of participation in a conspiracy). In addition, Dunbar's testimony that Norris gave him a disk with information on how to manufacture methamphetamine is further evidence that Norris knew how to manufacture methamphetamine and supports his involvement in an agreement to manufacture, and to possess chemicals for manufacturing, methamphetamine. It does not matter that this testimony hinges on the credibility of Dunbar; that was the

province of the jury to determine.

Taken as a whole, this evidence supports a reasonable jury's determination beyond a reasonable doubt that there was an agreement among two or more persons to manufacture methamphetamine and to possess materials and equipment for doing so knowing, intending, or having reasonable cause to believe it would be so used, and that Norris knowingly and willfully joined that agreement. Burgos, 94 F.3d at 861–63.

### III. CONCLUSION

For the foregoing reasons,

IT IS THEREFORE ORDERED that Defendant's motion for judgment of acquittal renewed after the return of the jury's verdict is DENIED.

/s/ Thomas D. Schroeder<br>United States District Judge

November 7, 2017